UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                    Case No. 07-CR-181

HIRAM SMITH, et. al.,

        Defendants.

## ORDERS AND RECOMMENDATION ON THE DEFENDANTS' PRETRIAL MOTIONS

This complex nine defendant drug conspiracy case began by way of criminal complaint issued on June 28, 2007, (Docket No. 1), and represents the third round of cases relating to a drug trafficking organization headed by Kenyounta Harvester ("Harvester"), see 06-CR-56 (CNC) and 06-CR-207 (RTR), (Docket Nos. 108, 109). On July 10, 2007, the grand jury returned a four count indictment, (Docket No. 15), and on July 11, 2007 this case was designated as complex, (Docket No. 17). On August 10, 2007, this court ordered all pretrial motions to be filed no later than October 15, 2007. (Docket No. 69.)

Janson Johnson ("Johnson") filed a motion for disclosure of the identities of government informers. (Docket No. 94.) Arnita[1] Couch ("Couch") filed a motion to sever, (Docket No. 95), a motion for disclosure of the identity of certain government informants, (Docket No. 96), and a motion to suppress statements, (Docket No. 97). In accordance with this court's order, (Docket No. 99), Couch subsequently amended her motion to suppress statements, (Docket No. 102), and on

---

[1] The court notes there appears to be some confusion as to the spelling of Couch's first name. In the indictment and on the docket, she is referred to as "ARNITA," whereas in her motions she is referred to as "AMITA."

November 15, 2007, this court conducted an evidentiary hearing to resolve this motion. Following the close of evidence, the parties proceeded with oral argument on this motion.

The government has responded to the defendants' other motions. (Docket Nos. 107, 108, 109.) The pleadings on all motions are closed and the matters are ready for resolution. The Honorable J.P. Stadtmueller has yet to schedule a jury trial date.

## MOTIONS FOR DISCLOSURE

As for Johnson and Couch's motions for the disclosure of informants, the government responded on October 26, 2007 stating that "within a week the government will supply all defense counsel in this case with a list of the identities of all such 'sources of information,' as well as any new reports or debriefs." (Docket Nos. 108, 109.) Thus, the defendants' motions, (Docket Nos. 94 96), are moot and shall be denied as such.

## COUCH'S MOTION FOR SEVERANCE

As for Couch's motion to sever, Couch argues that the charge she faces is quite distinct from the charges alleged in the other counts of the indictment, and thus a joint trial would be prejudicial to Couch. (Docket No. 95.) Count one of the indictment alleges, that seven defendants, not including Couch, conspired to distribute more than five kilograms of cocaine in violation to Title 21, United States Code, Section 846, 841(a)(1), 841(b)(1)(A), and Title 18, United States Code, Section 2. (Docket No. 15.) Count two of the indictment alleges that two defendants, not including Couch, discharged a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2. (Docket No. 15.) Count three alleges that Marvin Thomas provided a firearm to Harvester knowing that Harvester was a convicted felon, in violation in Title 18, United States Code, Sections 922(d)(1) and 2. (Docket No. 15.) Couch is charged only in count four, which alleges that she harbored and concealed Harvester so as to prevent his discovery and arrest after having notice that a warrant for his arrest for a violation of

federal law had been issued, in violation of Title 18, United States Code, Section 1071. (Docket No. 15.)

The government opposes Couch's motion for severance, noting that although Couch is not charged in the conspiracy, the government would nonetheless intend to introduce evidence at her trial as to the scope of the conspiracy, the role of other co-defendants, and Couch's knowledge and involvement in the conspiracy, which it argues is "directly relevant to the allegation that she intentionally concealed [Harvester] to prevent his arrest." (Docket No. 107.)

Federal Rule of Criminal Procedure 8(b) permits the government to charge two or more defendants in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Rule 14 permits a court to sever joined defendants and order separate trials if "a consolidation for trial appears to prejudice a defendant." Couch does not allege that she was improperly joined pursuant to Rule 8(b) but rather she seeks relief from prejudicial joinder pursuant to Rule 14.

> [A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here.

Zafiro v. United States, 506 U.S. 534, 539 (1993) (internal citations omitted).

A defendant is not entitled to severance simply because she may have a better chance of acquittal if she had a separate trial. Id. at 540. "Rather, [a defendant] 'must establish that [s]he suffered actual prejudice' . . . by establishing that absent the granting of the severance motion, [s]he was unable to obtain a fair trial." United States v. Stokes, 211 F.3d 1039, 1042 (7th Cir. 2000) (citations omitted). The risk of prejudice that may result from "evidentiary spillover" is ordinarily slight. United States v. Abdelhaq, 246 F.3d 990, 992 (7th Cir. 2001). Generally, any risk of prejudice will be eliminated by appropriate limiting jury instructions. Zafiro, 506 U.S. at 539, 541. "Moreover, courts also have a strong interest in favor of joinder of offenses; in particular, joinder of offenses reduces the waste of precious judicial and prosecutorial time in the already overburdened federal judicial system and reduces the burdens on witnesses from testifying at multiple trials." Stokes, 211 F.3d at 1042.

Couch has failed to demonstrate that prejudice would result if a joint trial occurred in this case. In fact, Couch does not even allege that prejudice would result. The only reason for severance set forth in Couch's motion is that the charge against her is distinct from the charges against her co-defendants, thus requiring different evidence and witnesses. (Docket No. 95) Couch then states, without providing any additional support, that joinder "would render it difficult for a jury to make a reasonable judgment about her guilt," and "does not promote judicial economy."
Harvester is alleged to have been the head of a large drug distribution conspiracy and Couch is charged with concealing him from arrest. Undoubtedly, certain facts relating to this alleged conspiracy would be relevant in Couch's trial and if the defendants were severed, substantial evidence would have to be unnecessarily repeated. Thus, the court finds the joinder would promote judicial economy. Further, in light of Couch's failure to demonstrate that prejudice would result if a joint trial occurred, the court shall deny Couch's motion.

**COUCH'S MOTION TO SUPPRESS**

### Evidentiary Hearing Summary

The court received the testimony of a single witness, Milwaukee Police Detective Herb Glidewell ("Glidewell"). He testified that he was assigned to the HIDTA task force and was involved in the investigation of Harvester. Following the issuance of an arrest warrant for Harvester in early-March of 2006, Glidewell along with various other HIDTA agents and cooperating United States Marshals received a tip that Harvester was at the Park Manor Hotel on Appleton Avenue in Milwaukee, Wisconsin. The tip further specified the room number. At approximately 4:00 PM on March 17, 2006, a group of approximately ten law enforcement officers, including Glidewell, went to the hotel. They first proceeded to the office where Glidewell learned that the target room was rented in Couch's name.

The officers, all of whom were wearing bullet-resistant vests identifying themselves as law enforcement, approached the room. Many of these officers had their weapons drawn. Upon approaching the room, but before anyone knocked on the door, Harvester opened the door, exited the room and surrendered to law enforcement. A group of US Marshals then entered the room and Glidewell followed them inside. Glidewell described the hotel room as "very small," perhaps twelve-feet by twelve-feet. Couch was sitting on the bed and remained seating during the ensuing encounter, while Glidewell remained standing. When Glidewell entered guns were no longer drawn.

Glidewell identified himself, stated why he was there, and then asked Couch her name, address, and date of birth. From this information, a marshal checked to see if Couch had any outstanding warrants for her arrest. While this marshal was checking Couch for warrants, Glidewell asked her if she had rented the room. Couch replied that she had and stated that she had been there for a couple days. He then asked her if she knew Harvester was wanted, and she replied that she did. Glidewell asked Couch why she did not turn him in and she replied something to the effect of,

"Why would I do that? I don't need your money; I have my own." Glidewell responded by asking if Couch knew she could get in trouble for hiding Harvester, and Couch replied that she did not care because she would just get probation. Glidewell's entire conversation with Couch was short, perhaps a minute. He described his questions as "conversational" and stated that he never raised his voice.

At the end of this questioning, it was learned that Couch had two open warrants for her arrest, and soon thereafter Couch was placed in handcuffs and arrested on these outstanding warrants. At no point prior to this was Couch placed in handcuffs.

Glidewell testified that at no point during this roughly ten-minute encounter was Couch free to leave the room. At first, she was detained to permit investigation into whether she had any warrants. Later, after it was determined that she had two warrants for her arrest, Couch was arrested on those warrants. Couch never asked to leave prior to being arrested. At no point was Couch ever provided with her Miranda warnings. Glidewell further testified that, prior to his encounter with Couch at the motel, her name had never surfaced during the investigation of Harvester.

**Analysis**

> In order to protect an individual's right against self-incrimination under the Fifth Amendment, the Supreme Court held in Miranda v. Arizona, 384 U.S. 436, 444 (1966), that suspects must be advised of certain rights before they are subjected to "custodial interrogation." A suspect must be both in custody and subject to "interrogation" to trigger the Miranda warnings requirement.

United States v. Yusuff, 96 F.3d 982, 987 (7th Cir. 1996) (citation omitted).

Miranda warnings are not required merely because the individual questioned by law enforcement officers is a suspect or is the focus of a criminal investigation. United States v. Jones, 21 F.3d 165, 170 (7th Cir.1994) (citing Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). A person may have their freedom restricted in some manner without being fully arrested and thus would not be entitled to the Miranda warnings. Berkemer v. McCarty, 468 U.S. 420, 439 (1984). A person is

"in custody" for Miranda purposes if she is formally arrested or is subject to a restraint on freedom of movement associated with a formal arrest. United States v. Lennick, 917 F.2d 974, 977 (7th Cir. 1990); United States v. Wyatt, 179 F.2d 532, 535 (7th Cir. 1999) (citing United States v. James, 113 F.3d 721 (7th Cir. 1997)). In evaluating the "in custody" requirement, courts employ an objective analysis and review the totality of the circumstances. United States v. Fazio, 914 F.2d 950, 954 (7th Cir.1990); Wyatt, 179 F.3d at 535. Factors that may be significant in determining whether suspect is "in custody" include: whether and to what extent the suspect has been made aware that she is free to refrain from answering questions; whether there has been prolonged, coercive, and accusatory questioning; whether police have employed subterfuge to induce self-incrimination; the degree of police control over environment in which interrogation takes place; whether suspect's freedom of movement is physically restrained or otherwise significantly curtailed; and whether the suspect could reasonably believe that he has right to interrupt prolonged questioning by leaving scene. Sprosty v. Buchler, 79 F.3d 635, 641 (7th Cir. 1996) (internal citations omitted). Ultimately, the court's focus in regards to custodial interrogation is coercion. United States v. Martin, 63 F.3d 1422, 1430 (7th Cir. 1995).

As for the question of whether or not a suspect was subjected to interrogation, the Court in Miranda defined interrogation as "questioning initiated by law enforcement officers." Miranda, 384 U.S. at 444. The Court later expanded on this definition and said "the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980); see also Pennsylvania. v. Muniz, 496 U.S. 582, 601 (1990) (quoting Harryman v. Estelle, 616 F.2d 870, 874 (5th Cir. 1980)) (defining interrogation as including "both express questioning, and also words or actions that, given the officer's knowledge

7

of any special susceptibilities of the suspect, the officer knows or reasonably should know are likely to 'have . . . the force of a question on the accused.'").

Applying the Innis and Muniz definitions to the facts of this case, this court believes that Couch was subjected to interrogation beginning with Glidewell's question regarding whether Couch was aware that Harvester was wanted. It was not necessary for Glidewell to elicit this information while he waited for the warrant check, which only took two minutes. He had no idea who Couch was, but he made no inquiry into why she was in the room with Harvester, e.g., girlfriend, relative, etc. Instead, he directed his questions to a clearly incriminating subject matter. On cross examination, Glidewell acknowledged that he knows it is a violation of the law to conceal a wanted person, but this was not the "focus" of his questions. Interestingly, he was never asked, nor ever explained that, if not to seek incriminating information, what was the focus of his questions? Glidewell's question about Harvester's wanted status and all subsequent questions were reasonably likely to elicit incriminating responses and thus qualify as interrogation. Therefore, the court shall turn its attention to the question of custody.

Turning to the factors set forth in Sprosty, 79 F.3d at 641, the court notes that the encounter in the motel room was brief, lasting a total of less than ten minutes from the time the agents entered until the time Couch was arrested on her outstanding warrants. The interrogation portion of the encounter was exceptionally brief, lasting roughly a minute. Couch was not physically restrained and there is no evidence to suggest that her freedom of movement was otherwise significantly curtailed. For example, there is no indication that she was instructed by law enforcement to sit on the bed. On the other hand, while it was Couch's hotel room and not a police interrogation room, law enforcement agents forcibly entered and the environment was essentially entirely controlled by the police. As Glidewell described the scene, there were a large number of law enforcement officers either in or around a "very small" hotel room where Couch was alone. At the time of the

8

Case 2:07-cr-00181-JPS   Filed 11/19/07   Page 8 of 14   Document 114

questioning, there were at least two law enforcement officers in the room with Couch. As for whether Couch could have reasonably expected that she could have voluntarily left the scene, the court finds that a reasonable person in Couch's position would not have felt free to leave. In fact, Glidewell testified that, Couch was not free to leave during questioning because he had not yet determined whether she was wanted. Although Glidewell's subjective belief as to Couch's freedom is not determinative, under these circumstances, Glidewell's subjective belief simply corroborates what a reasonable person in Couch's position would have believed.

However, simply because Couch was not free to leave does not mean that Couch was in custody and thus entitled to the Miranda warnings. A person may be seized under the Fourth Amendment, and thus not free to leave, for example, as a result of a traffic stop or a Terry stop, but nonetheless not in custody so as to require law enforcement to inform the suspect of her Miranda rights. Berkemer, 468 U.S. at 439-40. The Supreme Court stated that such detentions were of a "comparatively nonthreatening character" and thus the risk of coercion that arose from custodial interrogation that Miranda sought to protect against was not present. Id. at 440. Notwithstanding the propriety to detain, if a suspect in a traffic stop or a Terry stop is subsequently "subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Id.

Similarly, a person who is detained during the execution of a search warrant is ordinarily not in custody for Miranda purposes. United States v. Saadeh, 61 F.3d 510, 520 (7th Cir. 1995); United States v. Burns, 37 F.3d 276, 281 (7th Cir. 1994). The Seventh Circuit noted that

> [m]ost detentions that occur during the execution of a search warrant, like most Terry stops, are comparatively nonthreatening. They are often short in duration. . . . Furthermore, detention in a person's own residence or hotel room could only add minimally to the public stigma associated with the search itself and would involve neither the inconvenience nor the indignity associated with a compelled visit to the police station.

9

Burns, 37 F.3d at 281 (internal quotations omitted).

In Burns, the defendant sought suppression of certain statements she made during the execution of a search warrant at her hotel room. Id. at 278. The defendant asked to leave the hotel room numerous times, but she was detained and told to sit on the bed as two law enforcement officers searched the hotel room. Id. During the search, an officer asked Burns what she was doing in Milwaukee, to which she responded that she was visiting friends. However, later she said she did not have any friends in Milwaukee when the officer asked her who her friends were. Id. When an officer discovered a kilogram of cocaine in a dresser drawer wrapped in a hotel towel, the defendant disavowed ownership of the item. Id.

The Seventh Circuit held that the defendant was not in custody while she was detained during the execution of the search warrant, and therefore the Miranda warnings were not required. Id. at 281. The court explained its decision by stating that the defendant

> was detained for less than ten minutes prior to her arrest. She was not handcuffed or physically restrained in any way until she was formally placed under arrest. Only two law enforcement officers conducted the search, and they did not brandish weapons. Finally, the officer's questioning was limited in scope and duration.

Id.

Similarly, in Saadeh, the defendant sought to suppress statements he made while detained during a consensual search of a building in which he was an occupant. 61 F.3d at 519. Federal agents forcibly entered an auto repair shop during a drug deal by breaking a glass door with a battering ram. Id. at 515. The agents then secured the building, ordered the occupants to a central location, patted them down, and ordered them to empty their pockets. Id. The agents obtained consent to search the building, and while conducting the search, an agent asked the defendant if a toolbox was his. The defendant responded that it was, and the agent used keys that the defendant had earlier removed from his pockets to open the toolbox. Id. Inside the toolbox, the agent found

$35,000. Relying upon Burns, the Seventh Circuit again held that Miranda was not required and stated,

> [the defendant] was not detained for an unreasonably long period of time prior to his eventual arrest. The officers did not handcuff or physically restrain him in any way until they formally placed him under arrest. The verbal exchange between him and the officer took place shortly after their entry. At the time he was questioned, [the defendant] had been treated no differently from other building occupants, all but two of whom were ultimately released and not prosecuted. As [the defendant] stipulated, he was not under arrest. Moreover, [the defendant] was not the isolated target of any directed questioning; in fact, the officer who asked the question did not even know [the defendant's] identity at the time he posed the question. Finally, the officer's questioning was limited in scope and duration--a single question.

Id. at 520.

Although the present case involves an arrest warrant rather than a search warrant, the distinction is inconsequential for present purposes. The rule the Supreme Court has enunciated in Michigan v. Summers, 452 U.S. 692, 705 (1981), that a search warrant "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted," applies equally to instances where officers enter a residence pursuant to a valid arrest warrant. See Payton v. New York, 445 U.S. 573 (1980). Whether entering pursuant to a search warrant or an arrest warrant, officers may reasonably fear that the buildings' occupants may obtain weapons which may be used against them or destroy evidence. Here, Glidewell did not testify as to the reason the arresting officers entered the hotel room after Harvester exited the hotel room of his own volition and was arrested, but since Couch did not challenge the propriety of the agents' entry, it is not an issue presented to this court.

The court has identified one case that is largely factually similar to the present case. Relying in part upon United States v. Burns, 37 F.3d 276 (7th Cir. 1994), the Eastern District of Kentucky in United States v. Mullikin, 2006 U.S. Dist. LEXIS 40900, found that a defendant was not in custody when questioned in his hotel room that the police officers entered without permission in an effort to

arrest the defendant's wife. Police officers received two anonymous phone calls regarding several robberies. Id. at 1-2. The callers identified the defendant and his wife as being responsible for the robberies and one caller stated that the defendant's wife had an active unrelated warrant for her arrest. Id. One caller also stated that the pair was staying at a particular hotel. Id.

After confirming the wife's warrant, the officers arrived at the hotel, learned the room was registered to the defendant's wife, and upon hearing a television in the room, had the manager open the door. Id. at 2-3. The officers located the wife and arrested her. Id. at 3. She was taken outside for questioning, during which she implicated the defendant in the robberies. Id. The officers then returned to the room and an officer asked the defendant, "Do you know what we're here for?" to which the defendant responded, "I'm going to [the] federal penitentiary, and I've been all over the news." Id. The defendant was then handcuffed and placed under arrest. Id. The court held that the defendant was not in custody, and thus the Miranda warnings were not required. The court stated,

> The purpose of the questioning is unclear, but was limited to one question, "Do you know why we're here?" The detectives did not proceed with any further questions concerning the robberies and, in fact, told Defendant that they did not want to talk to him until the got to the station. Although [a detective] testified she kept Defendant in her line of sight while the other detectives were arresting and questioning [the defendant's wife], Defendant just remained on the bed without any force making him remain there. The fact that the questioning occurred in a motel room, like a home, is much less coercive an environment than a police station and courts have often held that suspects were not in custody in similar situations.

Id. at 19 (citing Burns, 37 F.3d at 281) (internal citation to the record omitted).

The court has set forth Mullikin in some detail because the case presents a substantially similar situation, but one in which the court found that the defendant was not in custody. Based upon some significant factual distinctions that weigh on the issue of custody, this court is persuaded that a result opposite of Mullikin applies in this case. Notably, like in Mullikin, Glidewell did not question Couch about the main focus of the agents' investigation, i.e. Harvester's drug conspiracy. However, Glidewell did ask Couch incriminating questions and Couch's responses to those

12

questions form the basis for the charges Couch presently faces. Unlike the defendant in Mullikin, who was told that the officers did not want to talk to him, by the nature of his questions in a conversational tone, Glidewell encouraged Couch to talk. Although brief in duration, these questions were quite substantive in that they essentially constituted an admission to the elements of the crime with which Couch is charged. See 18 U.S.C. § 1071. Finally, the court finds the size of the room to be very significant in the custody calculus, particularly when the size is viewed in light of the number of law enforcement officers involved in the arrest of Harvester. Even if there were only two law enforcement officers in the "very small" room while Couch was questioned, it cannot be forgotten that only minutes earlier, the room was filled with numerous law enforcement officers with guns drawn. These officers retreated but remained in the immediate vicinity of the room. Further, the fact that Glidewell was standing over Couch while asking questions has an intimidating and coercive affect on the seated individual.

The officers executing an arrest warrant for Harvester were permitted to briefly detain Couch as an occupant of the hotel room in which Harvester was staying. However, in evaluating the totality of the circumstances presented in this case, it is the conclusion of this court that this detention crossed the line to become an instance of custody. The court further finds that the questions posed to the defendant can be characterized as interrogation. This means that Glidewell was required to inform Couch of her Miranda rights prior to interrogating her. Because Glidewell failed to inform Couch of her constitutional rights while subjecting her to custodial interrogation, this court shall recommend that Couch's motion to suppress be granted.

**IT IS THEREFORE ORDERED** that Janson Johnson's motion for disclosure of the identities of government informers, (Docket No. 94), is **denied as moot**.

**IT IS FURTHER ORDERED** that Arnita Couch's motion for disclosure of the identity of certain government informants, (Docket No. 96), is **denied as moot**.

**IT IS FURTHER ORDERED** that Arnita Couch's motion to sever, (Docket No. 95), is **denied**.

**IT IS FURTHER RECOMMENDED** that Arnita Couch's motion to suppress statements, (Docket No. 97), be **granted**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of right to appeal.

Dated at Milwaukee, Wisconsin this 19th day of November, 2007.

s/AARON E. GOODSTEIN<br>
U.S. Magistrate Judge